1  Roy Tuck
   1600 E. Vista Way #85
2  Vista, CA 92084
   Ph: 760-840-1551
3                              NUNC PRO TUNC
                               Mar 14 2016
4  Plaintiff In Pro Se

```
┌─────────────────────────────────┐
│           FILED                 │
│   ┌─────────────────────┐       │
│   │    Mar 16 2016      │       │
│   └─────────────────────┘       │
│   CLERK, U.S. DISTRICT COURT    │
│ SOUTHERN DISTRICT OF CALIFORNIA │
│ BY      s/ kennethm     DEPUTY  │
└─────────────────────────────────┘
```

5

6

7

8          **IN THE UNITED STATED DISTRICT COURT**
              **SOUTHERN DISTRICT OF CALIFORNIA**
9

10  ROY TUCK,                          )  Case No. **3:16-cv-160-JLS-KSC**
                                       )
11                                     )  **AMENDED COMPLAINT FOR**
                 Plaintiff,            )  **DAMAGES AND INJUNCTIVE**
12                                     )  **RELIEF PURSUANT TO**
         VS.                           )
13                                     )  1) VIOLATIONS OF TELEPHONE
                                       )     CONSUMER PROTECTION ACT
14                                     )     (TCPA) 47 U.S.C.§227 *et.seq.*;
    DIRECTV, a National satellite TV service )
15  provider, doing business in California, )  2) VIOLATIONS OF FEDERAL FAIR
    DOES 1 THROUGH 10, inclusively,    )     DEBT COLLECTION PRACTICES
16                                     )     ACT(FDCPA) 15 U.S.C.§1692 *et seq.*
                                       )
17            Defendants.              )  3) VIOLATIONS OF CALIFORNIA'S
                                       )     ROSENTHAL FAIR DEBT
18                                     )     COLLECTIONS PRACTICES ACT
                                       )     CALIFORNIA CODE CIV.§1788 *et seq.*
19  _____  )

20                 **COMPLAINT**

21          COMES NOW, ROY TUCK, Plaintiff, In Pro Se in the above-entitled

22  Complaint hereby sues the above-named defendant's and makes the following

23  allegations and claims against all of these same said defendants for strict statutory

24  violations of: The Telephone Communications Consumer Practices Act (TCPA)

25  47 U.S.C.§227 *et.seq.*,: TheConsumer Fair Debt Collection Practices Act (FDCPA)

26  15 U.S.C. §1692 *et seq.*,: For violations of the Telephone Communications Practices

27  Act (TCPA) 47 U.S.C. §227(a)(iii): For violations of the California Rosenthal Fair

28  Debt Collection Practices Act Civil Code Section 1788 *et seq.*

---

# I.   **PRELIMINARY STATEMENT**

**1.** This is an action for damages and injunctive relief brought to this honorable Ninth Circuit Court  by Plaintiff ROY TUCK against all of the following named defendant's as follows: •

• DIRECTV, a National satellite TV service provider, doing business in California,

• DOES 1 THROUGH 10, inclusively,  *for numerous statutory violations* of the Telephone Consumer Practices Act (TCPA's) as follows: •

• 47 U.S.C. §227(b)(1)(A)  (TCPA);

• 47 U.S.C. §227(b)(1)(A)(iii), (TCPA);

For strict statutory violations of the Fair Debt Collection Practices Act's (FDCPA's) as follows: •

• 15 U.S.C.§1692c(a)(1),  Fair Debt Collection Practices Act (FDCPA)

• 15U.S.C.§1692d(5),  Fair Debt Collection Practices Act (FDCPA)

• 15 U.S.C.§1692d(6), Fair Debt Collection Practices Act (FDCPA)

• 15 U.S.C. §1692e(10), Fair Debt Collection Practices Act (FDCPA)

For strict statutory violations of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) as follows: •

• California Code of Civil Procedure §1788 *et seq.*

**2.** Congress enacted the FCRA to establish rights to privacy over their credit and financial information and to insure the *"[a]ccuracy and fairness of credit reporting.* "FCRA provides several protections for consumers, including but not limited to the *right to be notified of any negative/unfavorable information reported in their name* and the *right to dispute inaccurate, outdated and/or incomplete information* on their personal consumer credit files and reports.

**3.** FCRA regulates credit reporting agencies as well as creditors, collection agencies and other parties who *provide consumer credit information to credit reporting agencies and/or obtain and use the consumer credit reports.* FCRA

Section 623, 15 U.S.C.§1681s-2, imposes obligations on furnishers of information to the credit reporting agencies. Furnishers must report *accurate information*, correct and update erroneous information, and provide certain notices to consumers pertaining to furnished information.

4. CCRAA was implemented to protect the credit information of California consumers. CCRAA also regulates consumer credit reporting agencies and furnishers of information with respect to personal, credit and other financial information submitted and maintained in their consumer credit file. CCRAA in California Civil Code §1785.25-1785.26 *refrains* furnishers of consumer credit information from reporting information that *they know or should have known was erroneous*, and obligates furnishers to *cease credit reporting* of information disputed by consumers *after receiving a notice of such dispute* from individual consumers.

5. CCRAA provides consumers with the *right to be informed of negative credit reporting* and the *right to dispute information in their credit reports*, which they believe is incomplete and/or inaccurate. Consumers also have the *right to bring civil actions against violators of any provision of the CCRAA with respect to their rights and their credit, and to seek monetary damages.* California Civil Codes §1785.19 and §1785.31.

6. The FDCPA regulates the behavior of collection agencies attempting to collect a consumer debt *on behalf of another entity*. The United States Congress has found *abundant evidence of the use of abusive, deceptive, and unfair consumer debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy*. Congress enacted the FDCPA to *eliminate abusive consumer debt collection practices by debt collectors*, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to *protect consumers against debt collection abuses described* in [15 U.S.C.§1692(a)-(e)].

1    **7.**   The FDCPA is a strict liability statute, which provides for actual and

2    statutory damages upon the showing of ***one violation***. The Ninth Circuit has held

3    that whether a debt collector's conduct violates the FDCPA should be judged from

4    the standpoint of the "*least sophisticated*" consumer. [Baker v. G.C. Services Corp.,

5    677 F.2d 775, 778 (9th Cir. 1982); *Swanson v. Southern Oregon Credit Service, Inc.*

6    869 F.2d 1222, 1227(9th Cir. 1988)]. This objective standard "ensure[s] that the

7    FDCPA *protects all consumers*, the *gullible as well as the shrewd ... the ignorant,*

8    the *unthinkable* and the *credulous*." [*Clomon v. Jackson*, 988 F.2d 1314, 1318-19

9    (2nd Cir. 1993)].

10    **8.**   To prohibit deceptive practices the FDCPA, at 15 U.S.C.§1692e,

11    outlaws the use of *false, deceptive,* and *misleading collection letters* and names a

12    non-exhaustive list of certain per se violations of *false* and *deceptive collection*

13    *conduct* 15 U.S.C.§1692e(1)-(16).

14    **9.**   To prohibit *harassment and abuses* by debt collectors the FDCPA, at

15    15 U.S.C.§1692d, provides that a debt collector *may not engage in any conduct the*

16    *natural consequences of which is to harass, oppress, or abuse any person in*

17    *connection with the collection of a consumer debt* and names a non-exhaustive list

18    of certain per se violations of harassing and abusive collection conduct

19    15 U.S.C.§1692d(1)-(6).  Among these per se violations prohibited by this section

20    are: *any collection activities and the placement of telephone calls without*

21    *meaningful disclosure of the callers identity* [15 U.S.C.§1692d(6)].

22    **10.**   The FDCPA also prohibits, at15 U.S.C.§1692c, *without the prior*

23    *consent of the consumer given directly to the debt collector*, or the *express written*

24    *permission of a court of competent jurisdiction*, or as reasonably necessary to

25    effectuate a post judgement judicial remedy, communication by a debt collector in

26    connection with the collection of *any consumer debt*., with any person other than the

27    consumer, his attorney, a consumer reporting agency if otherwise permitted by law,

28

1    **11.**    The RFDCPA *regulates collection agencies and original creditors* the
2    creditor, the attorney of the creditor, or the attorney of the consumer debt collector.
3    has determined that the banking and credit system and grantors of credit  to
4    consumers are *dependent upon the collection of just and owing debts* and that
5    *unfair or deceptive collection practices undermine the public confidence that is*
6    *essential to the continued functioning of the banking and credit system and sound*
7    *extensions of credit to consumers*. The Legislature has further determined that there
8    is a need that debt collectors *exercise their responsibility with fairness, honesty, and*
9    *due regard for the debtor's rights* and that debt collectors must be *prohibited from*
10   *engaging in unfair or deceptive acts or practices*.

## II.  JURISDICTION AND VENUE

12   **12.**    Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3)  and
15   15 U.S.C. §1692(k)(d)¸ supplemental jurisdiction also exists for the state law claims
16   pursuant to California Stat.§1788 and California Code of Civil Procedure §410.10.

17   **13.**    The following defendants: •

18   •    DIRECTV, a National satellite TV service provider, doing business in
19   California,

20   •    DOES 1 through 10 inclusively,
21   all conduct business in the State of California and therefore, personal jurisdiction is
22   established. The jurisdiction of this court is further conferred by 15 U.S.C.§1681p.

23   **14.**    Venue is proper pursuant to 28 U.S.C. §1391b and California Civil
24   Procedure §395(a). Venue in this Ninth District is proper in that plaintiff
25   ROY TUCK  resides in San Diego County.

26   **15.**    The defendant's DIRECTV and Does 1-10 at all times transact business
27   in San Diego County, and the conduct complained of occurred in San Diego County.

28   **16.**    This is an action for damages which *exceeds $50,000.00 U.S. Dollars*

# III.   PRIVATE RIGHT TO ACTION

**17.** FCRA Sections 616 and 617, U.S.C. §1681o, create private right of action consumers can bring against violators of any provision of the FCRA with regards to their credit. In *DiMezza v. First USA Bank, Inc.* supra, the court confirmed that "[...] the plain language of [CRA Sections 616 and 617, 15 U.S.C.§1681n and §1681o] provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. [...] there is a private right of action for consumers to enforce the investigation reporting duties imposed on furnishers of information."

**18.** *Gorman v. MBNA America Bank*, N.A., No. 06-17226 further established Private Remedy Against Furnishers by consumers and FCRA Section 1681s-2(b) *triggers Defendants' furnisher's liability under this section*, since Plaintiff made his initial written disputes with the credit reporting agencies.

**19.** California Civil Code §1785.15(f) expressly states that consumers "have a right to bring civil action against anyone [...], who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data" concerning a consumer's credit report. Plaintiff TUCK has further right to action pursuant to Cal. Civ. Code §1785.31(a), which states that plaintiff TUCK as "any consumer who suffers damages as a result of a violation of this title by *any person* may bring an action in a court of appropriate jurisdiction against that person to recover actual, statutory, and punitive damages together with attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**20.** *Sanai v. Saltz, et al.*, 2009 Cal. App. LEXIS 83 (Cal. App. 2d Dist. Jan. 26, 2009) established that consumers may re-plead their FCRA claims as violations of the CCRAA and that State claims are not preempted by the FCRA. In further support, courts have uniformly rejected creditors' and consumer reporting

1  agencies' arguments that the FCRA bars State law claims. See *Sehl v. Safari Motor*

2  discussion); *Harper v. TRW*, 881F. Supp. 294 (U.S.D.C. S.D. Mich. 1995);

3  *Coaches, Inc.*, 2001 U.S. Dist. Lexis 12638 (U.S.D.C. N.D. Cal. 2001);

4  *Rule v. Ford Receivables,* 36 F. Supp.2d 335 (U.S.D.C. S.D. Va. 1999);

5  *Watkins v. Trans Union*, 118F. Supp.2d 1217 (U.S.D.C. N.D. Ala. 2000);

6  *Swecker v. Trans Union*, 31 F. Supp.2d 536 (U.S.D.C. E.D. Va. 1998);

7  *Saia v. Universal Card Svc.*, 2000 U.S. Dist. Lexis 9494, 2000 Westlaw 863979

8  (U.S.D.C. E.D. La. 2000); *Sherron v. Private Issue by Discover*, 977 F. Supp.2d 804

9  (U.S.D.C. N.D. Miss 1997); *Hughes v. Fidelity Bank*, 709 F. Supp.2d 639,

10  (U.S.D.C. E.D. Pa. 1989).

11      **21.**   15 U.S. C.§1692k(a) states that "... any debt collector who fails to comply

12  with any provision of this title with respect to any person is liable to such person in

13  an amount equal to the sum of-."

14      **22.**   Cal Civ. Code §1788.30(a) states that "any debt collector who violates

15  this title with respect to any debtor shall be liable to that debtor only in an individual

16  action..."

17  # IV.   THE PARTIES

18      **23.**   Plaintiff ROY TUCK, (hereinafter "TUCK") is a natural person and a

19  resident of the State of California, San Diego North county, Vista, 92084.

20      **24.**   Upon information and belief defendant DIRECTV, (hereinafter "DTV")

21  is a National provider of satellite TV service, doing business in California. DTV is

22  also a nationwide provider of accounts receivable management and consumer debt

23  collection activities, DTV's corporate office is located at 6200 S. Syracuse Way,

24  Suite 125, Greenwood Village Colorado, 80155.

25      **25.**   <u>Defendants</u> Does 1 thru 10, are individuals and business entities, form

26  unknown, doing business in the State of California as credit reporting agencies, debt

27  collection agencies, creditors or other persons or entities which engage in credit

28  reporting and/or debt collection. Does 1-10, inclusively, includes individuals or

business entities doing business in the State of California as credit reporting agencies, debt collectors and/or creditors who have refused to delete accounts of plaintiff TUCK's that were procured through identity theft, mixed file or other manner of recording an inaccurate credit account, even after plaintiff TUCK has notified them of the false or inaccurate derogatory consumer credit information, and also who have reported such accounts as derogatory credit references to credit reporting agencies (hereinafter "CRA's").

26.   Plaintiff TUCK does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of defendants DOES 1-10 inclusively, under the provisions of Section §474 of the California Code of Civil Procedure.

27.   Plaintiff TUCK is informed and believes and on that basis alleges that defendants DOES 1-10 inclusively, are in some manner responsible for the acts, occurrences and transactions as officers, directors or managing agents of defendants DOES 1-10 or as its agents, servants, employees and/or joint ventures and as set forth in this Complaint, and that each of them are legally liable to plaintiff TUCK, as set forth below and herein:

a)   Said Officers, directors or managing agents of defendants DOES 1-10 personally acted willfully with respect to the matters alleged in this Complaint;

b.   Said Officers, directors or managing agents of defendants DOES 1-10 personally authorized, approved of, adopted and/or ratified the acts alleged herein or the agents, servants, employees and/or joint ventures of defendants DOES 1-10 did so act;

c.   Said Officers, directors or managing agents of defendant's DOES 1-10 inclusive, personally participated in the acts alleged herein;

d.   Said Officers, directors or managing agents of defendants DOES 1-10 inclusively,  personally had close supervision of their agents, servants, employees and/or joint ventures of defendant DOES 1-10 inclusively;

e.    Said Officers, directors or managing agents of defendants  DOES 1-10 personally were familiar with the facts regarding the matters alleged herein;

f.    Said Officers, directors or managing agents of defendants DOES 1-10 personally failed to investigate the circumstances appertaining to the acts alleged herein. They also failed and refused to repudiate the herein alleged actions and failed to redress the harm done to plaintiff TUCK.

g.    Furthermore, said Officers, directors, or managing agents of defendants DOES 1-10 failed and refused to punish or discharge the said agents, servants, employees and/or joint venturers of the defendants. Plaintiff TUCK will seek leave to amend this complaint to set forth the true names and capacities of the said fictitiously named defendants DOES 1-10  as enumerated above, together with appropriate charging allegations, when learned.

**28.**    Plaintiff TUCK is informed and believes, and thereon alleges that at all relevant times herein each defendant, whether actually or fictitiously named, was the principal, joint venturer, agent, servant or employee of each other defendant, and in acting as such within the course, scope and authority of such relationship, took some part in acts and omissions hereinafter set forth, by reason of which each defendant is liable to plaintiff TUCK for the relief prayed for in this Complaint, and any future amended Complaint. Furthermore, Plaintiff TUCK alleges that each act alleged herein, whether by named  defendants ,DOES 1-10 or fictitiously named defendants or otherwise, was expressly authorized or ratified, as these terms are used in California Civil Code Section §3294(b), by each and every other defendant herein, whether named or fictitiously named.

**29.**    Collectively, these defendants DOES 1-10 hereto will be referred to as "credit  bureau defendants" or "credit agency defendants",  is a consumer creditor which, among other activities, reports allegedly delinquent consumer debts to credit bureaus and is a"furnisher"of negative consumer credit  to credit bureau defendants.

# V.  **FACTUAL ALLEGATIONS**

**30.**  Plaintiff TUCK *has no prior or present established relationship* with the defendants DTV and DOES 1-10 as it pertains to *ANY* negative consumer debt account, or *any other* alleged accounts *in any amounts*.

**31.**  Plaintiff TUCK *has no contractual obligation to* defendants DTV and DOES 1-10 *to pay them anything*.

**32.**  Plaintiff TUCK *has never given* defendants DTV and DOES 1-10 *express written permission* to call plaintiff's cellular phones more than fifty five (55) times, [*many times more than once in the same business day*], [many times before the hours or 8:00 am in the morning and after 9:00 pm at night] between the dates of December 31, 2012 and today's date.

**33.**  Defendants DTV and DOES 1-10 called plaintiff's cell phone numbers (760) 840-1809, (760) 840-1551, from phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-4723 more than fifty five (55) times, *many of these fifty five (55) harassing consumer debt collection calls were made in the same business day*, [i.e. one day the defendants DTV DOES 1-10 called his cell phone seven (7) times in one business day] violating The Fair Debt Collection Practices Act 15 U.S.C. §1692 *et seq.* (FDCPA) more than fifty four (54) times and at the *very same time* violated the California Rosenthal Fair Debt Collection Practices Act Section §1788.17(CFDCPA),  by calling plaintiff TUCK on his personal cell phones on more than fifty five (55) separate occasions and caused plaintiff TUCK's cellular phones to ring repeatedly and continuously with the intent to annoy, abuse, or harass him into paying alleged non-existent consumer debts owed to the defendant's named herein.

**34.**  The same *consumer business debt[s]* allegedly owed to all of the defendant's herein arose out of a transaction that was primarily for *personal, family, or household purposes*.

**35.**  As plaintiff TUCK *has no business debt*, this same *alleged business debt*

presently sought now by defendants DTV and DOES 1-10 *could only have been used for personal, family, or household purposes*.

**36.**   During this same more than three year period of time the defendants DTV and DOES 1-10 totally ignored all written attempts by plaintiff TUCK to *cease and desist* all collection activities *immediately, instead,* these same defendant's *commenced an ongoing almost daily campaign over a more than three year period of time to harass, abuse and coerce plaintiff TUCK into paying an alleged consumer debt he has never owed anyone.*

**37.**   On October 23, 2012, plaintiff TUCK sent defendants DTV and DOES 1-10 a Notice of Intention to Commence Action by Certified Mail Receipt No # 7014 0510 0001 5651 5728 *which* to date defendants DTV and DOES 1-10 have fully ignored these requests and to date is *not responding to any* written communication efforts/demands  made by the plaintiff.

# VI.   COUNT I
## VIOLATIONS OF THE TELEPHONE COMMUNICATIONS PRACTICES ACT (TCPA) 47 U.S.C. §227(b)(1)(A) AGAINST DEFENDANTS DTV and DOES 1-10

**38.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 37 herein.

**39.**   In 1991, Congress enacted th TCPA [1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

**40.**   The TCPA regulates, amongst other things, the use of Voice and ATDS systems. Specifically, the *plain language* of Section §227(b)(1)(A) prohibits the use of an ATDS system to make any call to a wireless number, or to use a Voice system during such a call, in the absence of *an emergency* or the *prior express written consent* of the called party.[2]

**41.**   According to findings by the FCC, the agency Congress vested with the authority to issue regulations implementing the TCPA, such calls are strictly prohibited because, as Congress found, telephone calls using a Voice or an ATDS

system are a _greater nuisance and invasion of privacy_ than _live solicitation calls,_ and such calls can be _costly and inconvenient to the called party_. The FCC also recognized that _wireless customers are charged for incoming calls whether they pay in advance or after the cell phone minutes are used_. [3]

**42.**    On January 4, 2008, the FCC released a Declaratory Ruling wherein it was confirmed that all Voice and ATDS consumer debt collection calls to a wireless cell phone number by a creditor or consumer debt collector are permitted only if the calls are made with the "_prior express written consent_" of the called party. [4]

**43.**    The FCC "emphasize[d] that prior express written consent is deemed to be granted only if the wireless number was provided during the transaction that resulted in the debt owed. [5]

**44.**    This same Declaratory Ruling of 2008 further dictates that:

" a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for _any_ violation of the Commission's rules. Calls placed by a third party debt collector on behalf of that creditor are treated as if the creditor itself placed the call ."[6]

**45.**    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the defendants DTV and DOES 1-10 to _demonstrate_ that plaintiff TUCK gave his _prior express written consent_ to use a Voice and/or a ATDS system to place numerous calls to his cell phones within the meaning of the statute. [7]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codiified at 47 U.S.C. §227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 et. seq.

[2] 47 U.S.C. §227(b)(1)(A).

[3] _Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991_, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] _In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991_ ("_FCC Declaratory Ruling_"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] _FCC Declaratory Ruling_, 23 F.C.C.R. at 564-65 (¶ 10).

[6] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codiified at 47 U.S.C. §227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 et. seq.

**46.**    At all times pertinent hereto, defendants DTV and DOES 1-10 , have conducted their business's by engaging in consumer debt collection practices.

**47.**    The defendants DTV and DOES 1-10, all of them have made hundreds of thousands of telephone calls to the cellular telephones of consumers for the purposes of collecting consumer debts allegedly owed to them, or, consumer debt's bought directly from the original consumer creditor by them.

**I.    FIRST CHALLENGED PRACTICE:**
Debt Collector's CBB and Does 1 Through 10
made Calls To Plaintiff's Cellular Telephones Using a
Voice And/Or ATDS System .

**48.**    At all times pertinent hereto, the defendants DTV and DOES 1-10, as Debt Collectors, have utilized a Voice and/or a ATDS system during consumer debt collection calls made to the cellular telephones of consumers who _had not_, during the transaction that resulted in the alleged consumer debt, previously given defendants DTV and DOES 1-10, _express written permission or consent_ to _receive such calls_.

**49.**    Calls utilizing Voice and/or a ATDS system allow defendants DTV and DOES 1-10, to _collect more consumer debt._

**50.**    At all times pertinent hereto, defendants DTV and DOES 1-10, have utilized a Voice and/or a ATDS system during debt collection calls which is one of this "industries newest innovations" which is "agentless" and can place hundreds of recorded messages as consumer debt reminders all in the same business day."

**51.**    At all times pertinent hereto, defendants DTV and DOES 1-10, all consumer debt collectors, have utilized a Voice and/or a ATDS system including a predictive dialer, to make debt collection calls to the private cellular telephones of consumers who had not, during the transaction that resulted in the alleged consumer debt, _ever_ previously given defendants DTV and DOES 1-10, _express written permission or consent_ to receive such calls.

52.   A predictive dialer is a Voice and/or a ATDS system within the meaning of the TCPA, because it is equipment that, when paired with certain computer software,   has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

53.   Defendants DTV and DOES 1-10, have entered into written contracts with all of its subsidiaries to use predictive dialers, for example:

> **i.e. the terms of the Collection Services Agreement utilized by defendants DTV and DOES 1-10, *require that consumers be contacted " via Voice and/or a ATDS predictive dialer system in an effort to collect on past due balances." See Lee v. Credit Mgmt., LP, 2012 WL 113793, at \*11 & n.17 (S.D. Tex. 2012).***

54.   Calls utilizing an Voice and/or a ATDS system allow each and every defendant described herein DTV, and DOES 1-10 *to collect more debt*.

55.   At all times pertinent hereto,  defendants DTV and DOES 1-10, have been fully aware that its employees/personnel have utilized an Voice and/or a ATDS system because, *inter alia*, the use of an Voice and/or a ATDS system  is standard industry practice among consumer debt collectors., the "predictive dialer enables us to reach more of our client's while maintaining a cost-effective approach"and that the "dialer \*\*\* completes call campaigns more quickly\*\*\* conducts the most effective calling strategies \*\*\*."

56.   On information and belief, within the past three (3)  years, defendants DTV and DOES 1-10, have placed ten of thousands of Voice system and/or ATDS calls to the cellular telephones of consumers *who had not*, during the transaction that resulted in the alleged consumer debt, *previously given* defendants DTV and DOES 1-10, *prior express written  consent* to receive such calls.

II.   **Second Challenged Practice:**
Defendant's DTV and DOES 1-10 Making Calls To Plaintiff TUCK's cellular telephones using a Voice And/Or ATDS System .

**57.**   At all times pertinent hereto, defendants DTV and DOES 1-10, have utilized a Voice and/or a ATDS system during consumer debt collection calls to the cellular telephones of consumers who _had not_, during the transaction that resulted in the consumer debt, _previously_ given  defendants DTV and DOES 1-10, _express written consent_ to receive such calls.

**58.**   At all times pertinent hereto, defendants DTV and DOES 1-10,  have also utilized an Voice and/or a ATDS system , including a _predictive dialer_, to make consumer debt collection calls to the cellular telephones thousands of consumers who had not, during the transaction that resulted in the debt, previously given defendants DTV and DOES 1-10, _express written consent_ to receive such calls.

**59.**   Plaintiff TUCK in the past  has discovered company information over the internet and other sources  including customer reviews concerning defendants DTV and DOES 1-10, It is has been this plaintiff's strong belief that, the  defendants DTV and DOES 1-10, _within the past three  years_, has made hundreds of thousands of Voice and/or ATDS calls to the cellular telephones to consumers who had not, during the transaction that resulted in the alleged debt, previously given  defendants DTV and DOES 1-10, _prior express written consent_ to receive such calls.

## III.  **Plaintiff ROY TUCK**

**60.**   Plaintiff ROY TUCK  is a "person" as defined by 47 U.S.C.§153(39).

**61.**   On December 31, 2012, plaintiff TUCK began receiving the very first automated telephone call at 10:17 am and  more than fifty four (54) automated recorded telephone calls to follow from  defendants DTV and DOES 1-10 phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-4723 , on plaintiff's cell phone number (760) 840-1809 and (760) 840-1551.

62.   For Example, plaintiff TUCK's T-Mobile cell phone records show that he received incoming calls from defendants DTV and DOES 1-10, on at least <u>one</u> of the following dates:

a.     December 31, 2012;     (<u>three calls </u>from Phone # (800) 531-5000)

a.     March 13, 2013;         (one call from Phone # (800) 531-5000)

c.     March 14, 2013;         (<u>six calls</u> from Phone # (800) 531-5000)

d.     April 05, 2013;          (<u>four calls</u> from Phone # (800) 531-5000)

four calls before 8:00 am in the morning.

e.     April 20, 2013;          (<u>seven calls</u> from Phone # (866) 949-4907)

**[Please see EXHIBIT A attached hereto]** now for the more complete list of consumer debt collection calls made by defendants DTV and Does 1-10 to plaintiff TUCK's personal cell phone numbers.

63.   Defendant's DTV and DOES 1-10 placed a multitude of other calls to defendant TUCK's private cell phone numbers over the past three years, *more than this defendant cares to document in this Complaint*, but the finding of *the exact amount* of these *multiple harassing calls* can be found out by plaintiff TUCK during the Discovery process of this Complaint for Damages and Injunctive Relief set for Jury trial.

64.   Plaintiff TUCK *has no relationship with the* defendant's DTV and DOES 1-10, there exists *no contract* between plaintiff TUCK and defendant's DTV and DOES 1-10 *for arbitration or otherwise*.

65.   Defendant's DTV and DOES 1-10 *utilized a* Voice and/or ATDS *system during at least some of the more* than fifty five (55) calls placed cellular calls to the plaintiff's cellular phones described above.

66.   *All of the* Voice and/or ATDS *calls described above were placed by* defendant's DTV and DOES 1-10, to plaintiff TUCK's cellular phones *solely to collect a consumer debt allegedly owed to the* phones by plaintiff TUCK.

**67. (TCPA) 47 U.S.C. §227(b)(1)(A) states in part;**

**(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT VOICE AND/OR ATDS SYSTEM:**

**(1)** PROHIBITIONS - It shall be unlawful for any person within the United States, or person outside the United States if the recipient is inside the United States -

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice .

**68.** Defendant's DTV and DOES 1-10 *have demonstrated willful and knowing non-compliance* with 47 U.S.C. §227(b)(1)(A) *by using an automatic telephone dialing system* to call the plaintiff's cell phone numbers  from December 31, 2012 to the present date  more than fifty five (55) times. All of these calls between the dates of December 31, 2012 and today's date defendant's DTV and DOES 1-10 placed calls numerous harassing calls to the plaintiff TUCK's cell phone numbers (760) 840-1809, (760) 840-1551, from phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-4723 more than fifty five (55) times, even thought the plaintiff TUCK's cell phone numbers (760) 840-1809 and (760) 840-1551 have all been listed on the "National Do Not Call List" since April 14, 2010.

**69.**   Defendant's DTV and DOES 1-10 have committed more than fifty five (55)  separate strict statutory violations of 47 U.S.C. §227(b)(1)(A).  Accordingly Plaintiff TUCK is *entitled* to statutory damages in the amount of $500 dollars U.S. for the first *"unintentional"* consumer collection call made to plaintiff TUCK by the defendant's DTV, and DOES 1-10 on December 31, 2012, pursuant to 47 U.S.C. §227(b)(1)(A).

**70.**  Plaintiff TUCK is *also entitled to* treble damages in the amount of $1500.00 U.S. dollars for *each* of the additional fifty four (54) *"intentional"* consumer debt collection calls placed by defendant's CBB and DOES 1-10 , to the plaintiff's private cell phone numbers  (760) 840-1809, (760) 840-1551 after this

1  initial first "*unintentional*" call pursuant to 47 U.S.C. §227(b)(3)(B).

2      **71.**  Defendant's DTV and DOES 1-10 have demonstrated *willful and*

3  *knowing  non-compliance* with 47 U.S.C. §227(b)(3)(B) as those calls were <u>ALL</u>

4  *"intentional"*, meaning the last fifty four (54) consumer debt collection calls placed

5  by defendant's DTV and DOES 1-10 to plaintiff TUCK's cellular phone are

6  *subject to treble damages, or $1500 per call* pursuant to 47 U.S.C.§227(b)(3)(B) .

7      **72.**  Defendant's DTV and DOES 1-10 have also demonstrated *willful or*

8  *knowing non-compliance* with 47 U.S.C. §227(b)(1)(A)(iii) as forty nine (49) of the

9  consumer debt collection calls made by the defendant's DTV and DOES 1-10 to the

10  plaintiff cell phone's are subject to *treble damages* pursuant to U.S.C. §227(b)(3) as

11  these calls were *intentional* .

12      **73.**  Plaintiff TUCK and defendants DTV,and DOES 1-10 inclusively,

13  *do not* have an *established business relationship* within the meaning of

14  47 U.S.C. §227 *et seq.*

15      **WHEREFORE,** Plaintiff TUCK demands judgement for damages

16  against defendants DTV and DOES 1-10 inclusively, for actual, statutory, and

17  punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §227(b)(1)(A),

18  together with such other and further relief as this court may deem reasonable and

19  just under the circumstances.

20  

### VII.   COUNT II
**VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT(FDCPA) 15 U.S.C. §1692(c)(a)(1) AGAINST DEFENDANTS DTV and DOES 1-10**

23      **74.**  Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

24  allegations and general factual allegations in paragraphs 1 thru 73 herein.

25      **75.**  **15 U.S.C. §1692(c)(a)(1) states in part;**

26      COMMUNICATION WITH THE CONSUMER GENERALLY

27  without the *prior express written consent* of the consumer given directly to the consumer debt collector or the *express permission* of a court of competent jurisdiction, a consumer debt collector *may not* communicate

28  with the consumer in connection with the collection of the debt.

76. As previously alleged, defendants DTV and DOES 1-10 inclusively, are all "debt collectors" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. Section §1692 *et seq*. defendants DTV and DOES 1-10 inclusively, are all engaged in conduct proscribed by 15 U.S.C. Section §1692e(8), namely, "Communicating or threatening to communicate to any person negative consumer credit information which is known or which should have known to be false, including the failure to communicate that a disputed consumer debt is disputed" plaintiff TUCKreserves the right to allege other violations of the FDCPA as the facts of this case unfold.

77. Plaintiff TUCK alleges defendants DTV and DOES 1-10 inclusively, all *violated other statutory provisions* of the Federal Fair Debt Collection Practices Act, as follows:

a. 15 U.S.C. Section §1692d: defendants DTV and DOES 1-10 inclusively, and engaged in consumer debt collection efforts after they knew, and had determined, that they had no basis for continuing to pursue plaintiff TUCK that had the natural consequences of harassing, abusing and oppressing the plaintiff *in concert or in conjuction or unison with other named defendants contained herein in the above-entitled federal complaint*.

b. 15 U.S.C. Section §1692e: defendants DTV and DOES 1-10 *have threatened action, or taken action, including threats of negative credit reporting, threats of lawsuits and implicit or explicit threats of derogatory negative credit reporting, that cannot legally be taken because the alleged debt is not* plaintiff TUCK's *consumer debt*.

c. 15 U.S.C. Section §1692f: defendants DTV and DOES 1-10 have each used unfair or unconscionable means to collect or attempt to collect the alleged debt. Specifically, each has attempted to collect amounts not expressly authorized by law or by any agreement, and have continued to attempt collection in spite of cancellation of the underlying agreement. In essence, there is no agreement

1  and no obligation by which Mr. TUCK owes any monies to defendants DTV and

2  DOES 1-10 yet defendants DTV, and DOES 1-10 persists to this day in their

3  ongoing concerted campaign and harassing consumer collection efforts.

4    **78.**   Defendants DTV and DOES 1-10 knew, or should have known that

5  they placed more than fifty five (55) Voice and/or automated Voice or ATDS

6  system calls to plaintiff's cell phone numbers (760) 840-1809, (760) 840-1551,

7  from phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-

8  4723 more than fifty five (55) times, between the dates of December 31, 2012 to

9  the present day, were both inconvenient, annoying, and cost him money on his cell

10  phone bills that he had to pay for. All of these calls were made *deliberately and*

11  *intentionally, thus,* defendant's DTV and DOES 1-10 have committed fifty five (55)

12  separate and distinct statutory violations of 15 U.S.C. §1692(c)(a) . *Every single*

13  *one* of these illegally placed calls were placed by defendant's DTV and DOES 1-10

14  *without* the *prior express written consent* of the consumer plaintiff TUCK.

15    **79.**   As a result of these statutory violations of the Federal Fair Debt

16  Collection Practices Act by defendants DTV and DOES 1-10 inclusively, plaintiff

17  TUCK has suffered general and special damages according to proof, and is entitled

18  to a statutory penalty for each separate violation of Act.

19    **WHEREFORE,** plaintiff TUCK demands judgement for damages and

20  injunctive relief against defendants DTV and DOES 1-10 inclusively, for actual

21  statutory and punitive damages, attorney's fees and costs pursuant to 15 U.S.C.

22  §1692(c)(a), together with such other and further relief as the Court may deem

23  reasonable and just under the circumstances.

24

25    # VIII.   COUNT III
26  ## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
   ### §1692(d)(5) BY DEFENDANTS DTV and DOES 1-10

27    **80.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

28  allegations and general factual allegations in paragraphs 1 thru 86 herein.

**81. 15 U.S.C. §1692(d) states in part;**
<u>A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:</u>

**82. 15 U.S.C. §1692(d)(5) states in part;**
<u>Causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.</u>

**83.**   Defendant's DTV and DOES 1-10 inclusively, violated 15 U.S.C. §1692(d)(5) by calling plaintiff's cell phone numbers (760) 840-1809, (760) 840-1551, from phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-4723 more than fifty five (55) times, {***many times before 8:00 am in the morning***} {many times calling ***multiple times in the same day***} directly causing the plaintiff's cell phone to ring repeatedly and continuously with the *intent* to *annoy, abuse, or harass* the plaintiff.  Every single one of these placed calls were placed by defendant's DTV and DOES 1-10 *without* the *prior express written consent* of the consumer, plaintiff TUCK.

**84.**   During this same three year period of time between December 31, 2012 to the present day defendant's DTV and DOES 1-10 staff/personnel intentional and repeatedly called plaintiff's cell phone numbers (760) 840-1809, (760) 840-1551, from phone numbers (800) 531-5000, (800) 303-9117, (866) 949-4507, (877) 829-4723 more than fifty five (55) times,  This has caused this plaintiff undue *stress, confusion*, and *long term nervousness* and *embarrassment*, including <u>unexpected increased cell phone bills that this plaintiff could ill afford.</u>

**85**.  Plaintiff DTV alleges that defendant's DTV and DOES 1-10 caused his cell phones to ring on more than fifty five (55) separate occasions between the dates of December 31, 2012 to the present day, by causing him to answer these calls and either engage in a lengthy conversations with defendant's DTV and DOES 1-10 staff or,  have to listen to numerous  pre-recorded messages

left by defendant's DTV and DOES 1-10 inclusively, staff on TUCK's cell phone message service accounts, which plaintiff TUCK _has to pay monies for._

**WHEREFORE**, plaintiff TUCK demands judgement against defendant's DTV and DOES 1-10 inclusively, for actual, statutory, and punitive damages, attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VIIII.   COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) 15 U.S.C. §1692(d)(6) BY DEFENDANTS DTV and DOES 1-10

**86.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 85 herein.

**87. 15 U.S.C. §1692(d) states in part;**

> A consumer debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> **_The placement of telephone calls without meaningful disclosure of the caller's identity._**

**88.** Defendant's DTV and DOES 1-10 staff/personnel violated 15 U.S.C. §1692(d)(6) (FCPA) by placing more than fifty five (55) automated and/or voice calls to plaintiff TUCK's cell phones between the dates of December 31, 2012 and the present day. On several occasions these very same calls were made without meaningful disclosure of the caller defendant's DTV and DOES 1-10's true identity. All fifty five (55) calls were independently placed at different times.

**89.** Every single one of these more than fifty five (55) phone calls placed by defendant's DTV and DOES 1-10 inclusively, were being made _without_ the _prior express written consent_ of the consumer plaintiff TUCK.

This added to the plaintiffs daily confusion and anxiety about these very same calls.

> ***i.e.*** *Who is this person or machine on the other end of the phone?*
> *Why are they calling me almost every day, many times a day?*
> *Why are they leaving these strange messages?*
> *Why won't the people (when they do come on the line)*
> *not listen to me and stop calling me?*

**90.**  Defendant's DTV and DOES 1-10 are using the fact that plaintiff TUCK is hard of hearing and elderly by continually calling his personal cell phones *sometime's more than once a day*, to *harass, annoy* and *coerce* him into paying an alleged non-existent consumer debt.

**91.**  Defendant's DTV and DOES 1-10 inclusively, *thru mailed dunning letters and phone numerous harassing phone calls* to plaintiff TUCK *threatening* to report this same alleged non-existent consumer debt item to be placed by defendant's DTV and DOES 1-10 on all three National consumer credit reporting agencies that record and report plaintiff TUCK's credit. ***These very same illegal business activities border on the edge of professional business extortion practices.***

**WHEREFORE,** plaintiff TUCK demands judgement for damages against defendant's DTV and DOES 1-10 , for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §1692(d)(6) (FDCPA) together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## X.   COUNT V
### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) 15 U.S.C.§1692(e)(10) BY DEFENDANTS DTV AND DOES 1-10

**92.**  Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 91 herein.

**93.**  Defendant's DTV and DOES 1-10 inclusively violated 15 U.S.C. §1692(e)(10) (FDCPA) by the use of false representation or deception means to collect or attempt to collect a debt or to obtain information concerning a consumer.

94.  **DEFENDANTS DTV and DOES 1-10** staff *lied* to plaintiff TUCK on numerous occasions from December 31, 2012 to the present day to gain information about the Plaintiff TUCK .

95.  **15 U.S.C. §1692(e) states in part;**
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any consumer debt. Without limiting the general application of the foregoing. The following conduct is a violation of this section:

96.  **15 U.S.C. §1692(e)(10) states in part;**
The use of any false representation or deceptive means to collect or attempt to collect a consumer debt or obtain information about a consumer.

97.  Plaintiff TUCK received many more than fifty five (55) illegally placed calls by defendant's DTV and DOES 1-10 , staff *months after* he had requested in writing for *certification* of the alleged consumer debt pursuant to U.S.C.§1692(g)(1)(2)(5)(b), (FDCPA).

98.  Defendant's DTV, and DOES 1-10 , not only *ignored* this same *demand* for *certification/validation* of the alleged consumer debt, these above named consumer business entities commenced a campaign for many years to harass, oppress, threaten, confuse and cause the plaintiff TUCK experience long term emotional distress and confusion.

99.  These *more than* fifty five (55) illegally placed calls by defendant's DTV and DOES 1-10 , staff constitute more than fifty five (55) separate and distinct statutory violations as defined by 15 U.S.C.§1692g(1)(2)(5)(b) of the (FDCPA) statutes of the United States of America and the California Consumer Protection Statutes/Laws.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against  defendant's DTV and DOES 1-10 , for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C .§1692(e)(10) FDCPA), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# XI.   COUNT VI
## VIOLATIONS OF THE CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CALIFORNIA CIVIL CODE §1788 *et seq.* DEFENDANTS DTV AND DOES 1-10

**100.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 99 herein.

**101.**   Plaintiff TUCK is a *consumer* within the meaning of (FDCPA) 15 U.S.C. §1692 *et seq.*

**102.**   Defendant's , DTV, a National satellite TV service provider who conducts business in California,  and DOES 1-10  are seeking to collect an *alleged consumer debt* from plaintiff TUCK as defined by California Civil Procedure §1788(f) (CRFDCPA).

**103.**   The alleged defendant's , DTV, a National satellite TV service provider who conducts business in California,  and DOES 1-10 consumer debt account in question is a consumer transaction as defined by California Civil Procedure §1788(e), (CRFDCPA) as the Plaintiff TUCK has allegedly received property, services or money from ANY of the defendant's or an extension of credit, and such  property, services or money was used primarily for personal, family or household purposes.

**104.**   Defendant's each and every one of them have also violated §1788.11(d) of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing collection calls to the plaintiff's cellular phone repeatedly and continuously so as to annoy, harass or embarrass the plaintiff.  Plaintiff TUCK contends he has always paid his consumer bills in as timely manner as possible.

**105.**   All of the defendant's  violated §1788.17 of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing numerous harassing debt collection calls to the plaintiff TUCK with *such frequency* as to be *unreasonable* and to *constitute direct intentional harassment* of the plaintiff under the circumstances.

**106.** Defendant's , DTV and DOES 1-10, inclusively, also violated Section §1788.17 of the California Rosenthal Fair Debt Collections Practices Act (CFDCPA) by *continuously* failing to comply with the statutory regulations contained within the United States Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against defendant's DTV and DOES 1-10, inclusively, for actual statutory and punitive damages, attorney's fees pursuant to §1788.30(b) and costs pursuant to §1788.30(c), the California Rosenthal Fair Debt Collection Practices Act CC1788 *et seq.,* together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# XVIII.  PRAYER

I, ROY TUCK, the plaintiff In Pro Se, in the above-entitled Complaint respectfully prays for judgment as follows:

1.  For actual, general and special damages according to the proof at trial;
2.  For statutory penalties or civil penalties for each separate statutory violation where allowed by statute.
3.  For punitive damages against defendants according to proof at trial and using the applicable punitive damages standards from the involved statutes;
4.  For attorney's fees where authorized by statute or law;
5.  For costs and expenses of suit; and
6.  For such other relief as the court deems just and proper.

# XVIIII.  DEMAND FOR JURY TRIAL

**107.**   Plaintiff ROY TUCK hereby demands a trial by jury of all issues so triable as a matter of law. Respectfully submitted to this court this 11th day of March 2016. _Roy Tuck_____,

ROY TUCK, Plaintiff In Pro Se.

# XI.  VERIFICATION
## DECLARATION OF PLAINTIFF ROY TUCK

I, ROY TUCK, declare as follows:

**108.**  I am the In Pro Se Plaintiff in the above-entitled Ninth Circuit District case.

**109.**  I am of age, sound mind and competent to testify to all of the facts based on first-hand knowledge of all of the aforementioned items so stated.

**110.**  I have been damaged *financially*, *socially* and *emotionally* since December 31, 2012 as a direct result of defendant's , DTV a National satellite service provider  and DOES 1-10, inclusively,  unlawful actions and conduct including more than fifty five (55) calls to my cellular phones.

**111.**  I have read the foregoing pleading's in their entirety and believe all of the fact's therein so stated to be both *true and correct*.

**112.**  I declare under the penalty of perjury pursuant to the laws of California and the Courts of the United States, that the foregoing is true and correct to the best of my knowledge, information and belief.

**113.**  Plaintiff TUCK demands judgement for damages against defendant's DTV and DOES 1-10, inclusively,  , for actual, statutory, and punitive damages, attorney's costs and fees pursuant to pursuant to §1788.30(b) and costs pursuant to §1788.33(c) together with such other and further relief as the Court may deem reasonable and just under the circumstances.

Dated this 11th day of March 2016 By: _Roy Tuck_

ROY TUCK, Plaintiff In Pro Se

**EXHIBIT A**
## ROY TUCK 2013 CELL PHONE LOGS
### CELL PHONE NUMBER 760-840-1809
### CALLS PLACED BY DTV AND DOES 1-10
### TO PLAINTIFF TUCK's CELL PHONES

| DATE | TIME | FROM PHONE # | PLACED BY |
|------|------|--------------|-----------|
| 12/31/12 | 10:17 am | 800-531-5000 | DIRECT TV |
| 12/31/12 | 4:22 pm | 800-531-5000 | DIRECT TV |
| 12/31/12 | 4:25 pm | 800-531-5000 | DIRECT TV |
| 03/13/2013 | 7:31 pm | 800-531-5000 | DIRECT TV |
| 3/14 | 11:49 am | 800-531-5000 | DIRECT TV |
| 3/14 | 12:31 pm | 800-531-5000 | DIRECT TV |
| 3/14 | 12:35 pm | 800-531-5000 | DIRECT TV |
| 3/14 | 12:36 pm | 800-531-5000 | DIRECT TV |
| 3/14 | 7:05 pm | 800-531-5000 | DIRECT TV |
| 3/14 | 7:24 pm | 800-531-5000 | DIRECT TV |
| 3/19 | 9:18 am | 800-531-5000 | DIRECT TV |
| 3/19 | 12:42 pm | 800-531-5000 | DIRECT TV |
| 3/19 | 3:11 pm | 800-531-5000 | DIRECT TV |
| 3/19 | 3:59 pm | 800-531-5000 | DIRECT TV |
| 3/21 | 6:00 pm | 800-531-5000 | DIRECT TV |
| 3/26 | 4:59 pm | 800-531-5000 | DIRECT TV |
| 3/26 | 5:00 pm | 800-531-5000 | DIRECT TV |
| 4/5 | 7:33 am | 800-531-5000 | DIRECT TV |
| 4/5 | 7:35 am | 800-531-5000 | DIRECT TV |
| 4/5 | 7:36 am | 800-531-5000 | DIRECT TV |
| 4/5 | 7:33 am | 800-531-5000 | DIRECT TV |
| 4/8 | 2:27 pm | 800-531-5000 | DIRECT TV |
| 4/20 | 7:59 am | 866-949-4507 | DIRECT TV |
| 4/20 | 8:00 am | 866-949-4507 | DIRECT TV |

**EXHIBIT A**
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                    **PAGE 28**

| | | | |
|---|---|---|---|
| 1 | 4/20 | 8:02 am | 866-949-4507 | DIRECT TV |
| 2 | 4/20 | 8:41 am | 866-949-4507 | DIRECT TV |
| 3 | 4/20 | 8:54 am | 800-303-9117 | DIRECT TV |
| 4 | 4/20 | 8:55 am | 800-303-9117 | DIRECT TV |
| 5 | 4/20 | 10:24 am | 800-347-3288 | DIRECT TV |
| 6 | 4/25 | 7:59 am | 800-303-9117 | DIRECT TV |
| 7 | 4/25 | 8:03 am | 800-303-9117 | DIRECT TV |
| 8 | 5/6 | 8:41 am | 866-319-9838 | DIRECT TV |
| 9 | 5/6 | 8:42 am | 866-319-9838 | DIRECT TV |
| 10 | 11/7 | 6:01 pm | 800-531-5000 | DIRECT TV |
| 11 | 11/7 | 6:03 pm | 800-531-5000 | DIRECT TV |
| 12 | 11/7 | 6:06 pm | 800-531-5000 | DIRECT TV |

Note * The phone number listed below were all made by defendant's DTV and Does 1-10 to plaintiff's newer cell phone number 760-840-1551 below:

| | | | |
|---|---|---|---|
| 15 | 4/8 | 8:57 am | 800-531-5000 | DIRECT TV |
| 16 | 4/8 | 8:59 am | 800-531-5000 | DIRECT TV |
| 17 | 5/7 | 10:14 am | 800-531-5000 | DIRECT TV |
| 18 | 6/2 | 1:55 pm | 800-531-5000 | DIRECT TV |
| 19 | 7/1 | 11:19 am | 800-531-5000 | DIRECT TV |
| 20 | 7/1 | 11:21 am | 800-531-5000 | DIRECT TV |
| 21 | 7/1 | 11:25 am | 800-531-5000 | DIRECT TV |
| 22 | 8/6 | 9:39 am | 800-531-5000 | DIRECT TV |
| 23 | 8/9 | 9:21 am | 800-531-5000 | DIRECT TV |
| 24 | 10/17 | 12:30 pm | 800-531-5000 | DIRECT TV |
| 25 | 10/21 | 4:56 pm | 800-531-5000 | DIRECT TV |
| 26 | 10/21 | 11:32 am | 800-531-5000 | DIRECT TV |

**EXHIBIT A**
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Roy Tuck
1600 E. Vista Way #85
Vista, CA 92084
Ph: 760-840-1551

CLERK OF THE COURT
United States District Court
333 West Broadway, Suite 420
San Diego, CA 92101

Date:   March 11, 2016

Re: Case No.# 3:16-cv-160-JLS-KSC  TUCK vs. DIRECTV and DOES 1-10,


Clerk of the Court,

My name is ROY TUCK , Plaintiff In Pro Se filing in the above-entitled case.

I would greatly appreciate it if you could please conform/stamp/file the enclosed motions on my
behalf:

> 1 - AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
> TCPA 47 U.S.C. §227 *et seq*. FDCPA 15 U.S.C. §1692 *et seq*. CFDCPA Code §1788
> *et seq*. Proof of Service by Mail

Could you also please place my conformed copy in the enclosed self addressed stamped envelope
and place it in your outgoing mail so I can receive it in a few days?

Thank you very much for your assistance on this matter.



Sincerely submitted,


_____

ROY TUCK, DEFENDANT, *IN PRO SE*

oy E. Tuck
00 E. Vista Way
sta, CA 92084

7015 0640 0000 4511 3966

CPU U.S. POSTAGE
PB 1P 000
1128094        $ 9.430
FCMF      MAILED   MAR 11 2016
                    92084



Return Receipt
Requested

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
333 WEST BROADWAY
Suite 420.
SAN DIEGO, CA
                    92101



113649

