DAVID J. BENNER (Bar No. 105428)
david.benner@att.com
JENNIFER Z. MORRIS (Bar No. 202907)
AT&T SERVICES LEGAL DEPARTMENT
7337 Trade Street, 3rd Floor, Suite 3549
San Diego, California  92121
Tel: (858) 547-3283
Fax: (858) 689-9102

Attorneys for Defendant DIRECTV, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY TUCK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DIRECTV, a National satellite TV service provider, doing business in California, DOES 1 THROUGH 10, inclusively,<br><br>　　　　　Defendants. | CASE NO.  16-cv-00160-JLS-KSC<br><br>**DEFENDANT DIRECTV, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS OR IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>DATE: July 14, 2016<br>TIME:   1:30 p.m.<br>DEPT.:  Courtroom 4A, Suite 4135<br><br>**(NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT)** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS .......................................................................... 1

    A. The Customer Agreement ............................................................... 1

    B. Plaintiff's DirecTV Service ............................................................. 2

    C. The Arbitration Provision ............................................................... 3

    D. The Payment Collections Provisions .............................................. 4

III. ARGUMENT: THE COURT SHOULD COMPEL ARBITRATION IN ACCORDANCE WITH THE PARTIES' AGREEMENT ................................................................................. 5

    A. Arbitration Agreements Are To Be Enforced, Absent A Generally Applicable Defense .................................................... 5

    B. The Customer Agreement That Governs the Relationship Between DirecTV and Plaintiff Requires Arbitration ......................................................................................... 6

    C. Plaintiff's Dispute Falls Within the Arbitration Provision's Scope .......................................................................... 7

    D. The Parties' Arbitration Agreement Is Valid and Enforceable ....................................................................................... 9

IV. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT ............................................................................................ 10

V. CONCLUSION ........................................................................................ 11

**CASES**

*AT&T Mobility v. Concepcion*, 566 U.S. 333 (2011) ........................................................6, 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643 (1986) .............................8

*Bishoff v. DirecTV, Inc.,* 180 F. Supp.2d 1097 (C.D. Cal. 2002) ..........................................7

*Brown v. DirecTV, LLC* 2013 WL 3273811 (C.D. Cal. June 26, 2013) .......................6, 7, 9

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ..............................................6, 7

*Craig v. Brown & Root, Inc*., 84 Cal.App.4th 416 (2000) ......................................................7

*Golba v. Citigroup, Inc*., 8:11-cv-01003, Dkt. No. 55 at 8-10 (C.D. Cal. Mar. 30, 2012) ...............................................................................................................10

*Grabowski v. Robinson,* 817 F. Supp. 2d 1159 (S.D. Cal. 2011) .......................................10

*Hodsdon v. DIRECTV, LLC*, 2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) ..............7, 9, 10

*In re Cal. Title Ins. Antitrust Litig.* 2011 WL 2566449 (N.D. Cal. June 27, 2011) ...................................................................................................................6, 9

*In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060 (C.D. Cal. 2011) ..........................................................................9, 10

*Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947 (9th Cir. 2012) ....................................9, 10

*Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143 (9th Cir. 1978) ...........................................................................................................10

*McNamara v. Royal Bank of Scotland Group*, 2012 W.L. 539 (S.D. Cal Nov. 5, 2012) .........................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1 (1983) ...................5, 7

*Murphy v. DIRECTV, Inc.*, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) .......................7, 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ...............................6

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) .........................................10

*Stachurski v. DirecTV, Inc.,* 642 F. Supp. 2d 758 (N.D. Ohio 2009) ...................................7

*United Computer Systems v. AT&T Corp.,* 298 F.3d 756 (9th Cir. 2002) ...........................6

**STATUTES**

9 U.S.C. § 2 .........................................................................................................................6, 9

9 U.S.C. § 3 ........................................................................................................................5, 10

9 U.S.C. § 4 ............................................................................................................................5

## I.

## INTRODUCTION

Plaintiff Roy Tuck ("Plaintiff") was a DirecTV customer who became delinquent on the bill for his DirecTV account. When he became a DirecTV customer, he accepted the terms of DirecTV's Customer Agreement ("Customer Agreement"). The Customer Agreement contains an arbitration provision which requires the Plaintiff to arbitrate disputes relating to the Plaintiff's account with DirecTV. In his complaint, the Plaintiff alleges that DirecTV violated various statutes by telephoning him for debt collection purposes. Any such alleged calls necessarily related to DirecTV's provision of services under the Customer Agreement. As such, he is required to arbitrate those claims pursuant to the arbitration provision in the Customer Agreement. Thus, DirecTV now seeks an order compelling arbitration, and staying the action pending completion of the arbitration. In the alternative, and since all of Plaintiff's claims are subject to arbitration, Defendant seeks an order dismissing Plaintiff's Complaint.

## II.

## STATEMENT OF FACTS

### A.   The Customer Agreement

As with most, if not all, consumer services, there are terms and conditions that accompany the provision and receipt of DirecTV programming services. Those terms and conditions are principally contained in the DirecTV Customer Agreement. See Declaration of Eva Kniley (filed concurrently) ("Kniley Decl."), ¶ 4. The Agreement has always been available on the DirecTV website, and is provided to customers for their review and acceptance at the time they establish service. Kniley Decl. ¶¶ 4 and 5. The Agreement informs customers in bold, capital letters in the very first paragraph on its first page that they may either reject the Agreement's terms by immediately cancelling service or accept its terms by continuing to receive service:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

Kniley Decl. Exhibit A (2007 Customer Service Agreement) Intro.

### B.  Plaintiff's DirecTV Service

Plaintiff ordered DirecTV service on January 31, 2008. Kniley Decl. ¶ 7. Mr. Tuck began using the DirecTV services on February 4, 2008. Kniley Decl. ¶ 15. At the time he ordered the services, DirecTV emailed the Plaintiff a link to the Customer Agreement. Kniley Decl. ¶ 9. Within 24 hours of the Plaintiff ordering service, DirecTV followed-up by emailing him a copy of the Customer Agreement. Kniley Decl. ¶ 11. The Customer Agreement provided that Plaintiff would accept the Customer Agreement terms by continuing to receive and not cancelling DirecTV services. Kniley Decl. Exhibit A (2007 Customer Agreement) Intro. After receiving the Customer Agreement, Plaintiff did not dispute the terms or conditions of the Customer Agreement and did not immediately cancel his DirecTV services. Kniley Decl. ¶ 13.

In addition to receiving the Customer Agreement, the Plaintiff was also presented with an Equipment Lease Addendum at the time the equipment was installed at his home. Kniley Decl. ¶¶ 6 and 18. In order to receive DirecTV services, a customer must have DirecTV install equipment (satellite dish, set, top box, etc.) at his home. Kniley Decl. ¶ 6. DirecTV will not install equipment unless a customer accepts the terms of the Equipment Lease Agreement. Kniley Decl. 6.

1  The Equipment Lease Addendum contained references to some of the key
2  provisions of the Customer Agreement, including the obligation to arbitrate
3  disputes.  Kniley Decl. ¶ 19, Exhibit E.  The Equipment Lease Agreement
4  specifically references the arbitration provision contained in the Customer
5  Agreement:

> ARBITRATION You and DirecTV agree that both parties will resolve any dispute under the ELA, the DirecTV Customer Agreement, or regarding the DirecTV service, through binding arbitration as fully set forth in the DirecTV Customer Agreement.  Kniley Decl. Ex. E.

DirecTV provided service to the Plaintiff until January 25, 2009 at which point he cancelled the service.  Kniley Decl. ¶ 22.  At the time the Plaintiff began his service with DirecTV, he agreed to a two year commitment.  Kniley Decl. ¶ 20.  When the service began he was advised that if the two year commitment was not fulfilled, a prorated early termination fee of up to $480 would be applied to his account.  Kniley Decl. ¶ 20.  Thus, when Plaintiff cancelled his DirecTV service on January 25, 2009, which was prior to his two year commitment, he was assessed a prorated early termination fee of $240.00.  Kniley Decl. ¶ 22.  Plaintiff's final bill consisted of a past due balance of $158.46, early cancellation fee of $240.00, and a late fee of $5.00.  The total amount due on his final bill was $403.36.  Kniley Decl. ¶ 23.  The Plaintiff's delinquent account was referred to outside collection agencies for collection purposes starting April 15, 2009.  Kniley Decl. ¶ 25.  The allegations in Plaintiff's Complaint regarding the efforts of DirecTV and third party collection agencies relate to Plaintiff's delinquent DirecTV account.  Kniley Decl. ¶ 26.

**C.    The Arbitration Provision**

The Plaintiff's Customer Agreement contained an arbitration provision. Kniley Decl. ¶ 10, Ex. A, § 9.  The front page of the applicable Customer Agreement directed Plaintiff to Section 9 to find the arbitration provision.  Kniley Decl. ¶ 12, Ex. A, Intro.  Section 9 is entitled "**RESOLVING DISPUTES**," and in

bold, capitalized letters, set off from the surrounding text, states that all disputes are subject to binding arbitration:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:
>
> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated…and under the rules set forth in this Agreement. Kniley Decl. Ex. A, § 9.

The arbitration provision also explains the meaning of the agreement to arbitrate (again in bolded, capital letters): "**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.**" Kniley Decl. Ex. A, § 9(b). Under the Arbitration provision, DirecTV pays all arbitration costs, with the possible exception of a filing fee (maximum of $125, and not to exceed the court filing fee in a plaintiff's home state). Kniley Decl. Ex. A, § 9(b). Subscribers are entitled to recover "any and all remedies" in arbitration as they could in court. Kniley Decl. Ex. A, § 9(b). The arbitration hearings take place in subscribers' hometowns under the laws of the states where they receive or received service. Kniley Decl. Ex. A, §§ 9(b), 10(b). The arbitration provisions are governed by the Federal Arbitration Act ("FAA"). Kniley Decl. Ex. A, § 10(b).

### D.     The Payment Collections Provisions

The Plaintiff's Customer Agreement also contained a payment provision Kniley Decl. Ex. A, § 2. Section 2 entitled "**PAYMENT**," and in bold, capitalized letters, set off from the surrounding text, states that:

> In return for receiving our Service, you promise to pay us as follows:

> You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your permission, until Service is canceled. The Outstanding balance is due in full each month. Kniley Decl. Ex. A, § 2.

Section 2 also provides for certain "Administrative Fees" associated with a customer's account, such as late payment fees, activation and deactivation fees, and other service fees. Kniley Decl. Ex. A, § 2(c). In addition, Section 2 includes a "Collection Costs" provision: "To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us." Kniley Decl. Ex. A, § 2(g). Collection efforts are thus specifically contemplated by, and addressed by, the Customer Agreement.

## III.

## ARGUMENT: THE COURT SHOULD COMPEL ARBITRATION IN ACCORDANCE WITH THE PARTIES' AGREEMENT

### A. Arbitration Agreements Are To Be Enforced, Absent A Generally Applicable Defense

Because the FAA reflects a strong policy favoring arbitration disputes, arbitration provisions governed by the FAA are to be liberally enforced. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 of the FAA provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall" stay the action until arbitration is completed in accordance with the terms of the parties' agreement. See 9 U.S.C. § 3. Section 4 of the FAA, in turn, empowers the Court to compel arbitration according to the parties' agreement. See 9 U.S.C. § 4.

Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within

the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). *See also United Computer Systems v. AT&T Corp.,* 298 F.3d 756, 766 (9th Cir. 2002) ("Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitration exists; and (2) that agreement encompasses the dispute at issue.").

Notwithstanding the FAA's liberal policy favoring arbitration, and as with any contract, an arbitration agreement may be voided only by proving a defense generally applicable to all contracts. *See* 9 U.S.C. § 2 (arbitration provisions must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract"). The Supreme Court recently reaffirmed this rule. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (ruling that arbitration agreements may be invalidated only "by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"); *see also In re Cal. Title Ins. Antitrust Litig.* 2011 WL 2566449, at *2 (N.D. Cal. June 27, 2011) (enforcing arbitration in light of Concepcion).

As explained below, the Customer Agreement between Plaintiff and DirecTV contains an arbitration provision that encompasses Plaintiff's dispute and that, in accordance with the FAA, should be enforced.

**B.     The Customer Agreement That Governs the Relationship Between DirecTV and Plaintiff Requires Arbitration**

As explained above, Plaintiff accepted the Customer Agreement that he received from DirecTV by continuing to receive DirecTV service, instead of rejecting the initial contract or any updated terms by immediately cancelling service. See Kniley Decl. ¶¶ 12 and 13. Plaintiff did not cancel his service upon receiving the Agreement and therefore manifested his acceptance of the Customer Agreement and its terms, including the arbitration provisions. *See Carnival Cruise*

1  *Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (enforcing terms on the back of
2  cruise ship ticket after passenger chose to board cruise after reviewing ticket);
3  *Craig v. Brown & Root, Inc*., 84 Cal.App.4th 416, 420-21 (2000) (enforcing
4  arbitration agreement where employee continued to work for employer after
5  receiving agreement).

6  Indeed, courts in California and around the country have held that DirecTV
7  customers who continue to accept service upon receiving the Customer Agreement,
8  in exactly the same way Plaintiff did here, became parties to the Customer
9  Agreement and its arbitration provisions.  *See, e.g., Brown v. DirecTV, LLC* 2013
10 WL 3273811 *at \*4 (*C.D. Cal. June 26, 2013*)* (confirming that DIRECTV's accept-
11 or-return practice is valid method of contract formation and compelling
12 arbitration)*;Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, at \*2 (C.D. Cal. Aug. 2,
13 2011) (Same)  *Stachurski v. DirecTV, Inc.,* 642 F. Supp. 2d 758, 766 (N.D. Ohio
14 2009) (same*); Bishoff v. DirecTV, Inc.,* 180 F. Supp.2d 1097, 1103-1106 (C.D. Cal.
15 2002) (same).  Moreover, a California District Court recently held that the same
16 arbitration provision at issue here did not expire when plaintiffs in that case
17 cancelled their service and, therefore, found that the arbitration provision applied to
18 plaintiffs' suit even though their claims arose after their service with DIRECTV had
19 ended.  *See Hodsdon v. DIRECTV, LLC*, 2012 WL 5464615, at \*2-3 (N.D. Cal.
20 Nov. 8, 2012) (enforcing DIRECTV's consumer-friendly arbitration provision).

21  **C.     Plaintiff's Dispute Falls Within the Arbitration Provision's**
22            **Scope**

23  The next inquiry is whether the parties' dispute falls within the scope of their
24 arbitration agreement.  Given the strong federal policy favoring arbitration, "any
25 doubts concerning the scope of arbitrable issues should be resolved in favor of
26 arbitration."  *Moses H. Cone*, 460 U.S. at 24-25.  The arbitration provisions here
27 extend to "any legal or equitable claim relating to this Agreement, any addendum,
28 or [the customer's] Service".  Kniley Decl. Ex. A, § 9.  When parties use such

expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (internal quote/cite omitted).

DirecTV's Customer Agreement relates to an ongoing service and relationship, and does provide that arbitrable claims are those related to and arising under the Customer Agreement. See Agreement, § 9 (emphasis added):

> In order to expedite and control the cost of disputes, you and we agree that any **legal or equitable claim relating to this Agreement, any addendum, or your Service** (referred to as a "Claim") will be resolved as follows:…

Plaintiff's claims against DirecTV do "relat[e] to" and/or "aris[e] under" the Customer Agreement and his service. Pursuant to the Customer Agreement, and as a condition of receiving the services that he did receive from DirecTV, Plaintiff was obligated to make specified payments (which he did not.) As a result of Plaintiff's failure to pay what he was obligated to pay, Plaintiff's account entered collections and he received debt collection calls – calls to recoup unpaid fees Plaintiff was obligated to pay (but did not) and efforts specifically contemplated by the Customer Agreement. Kniley Decl. ¶¶ 23-26, Ex. A, § 2(g) ("To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us.") Plaintiff's claims therefore fall squarely within the scope of the parties' arbitration agreement.

Indeed, several California District Courts recently found that collections calls purportedly violating the TCPA were within the scope of an arbitration agreement. In *McNamara v. Royal Bank of Scotland Group*, 2012 W.L. 539 2181 (S.D. Cal Nov. 5, 2012) the court found that collections calls made in conjunction with money owed on an account were indeed related to the parties' underlying credit card agreement and that TCPA claims related to such calls should be arbitrated. *See Id.*, *7 ("Without a doubt, the phone calls to Plaintiff were related to 'collection

activity,' an issue explicitly contemplated by the Agreement."). In *Brown v. DirecTV, LLC*, 2013 WL 3273 811, at *4-6 (C.D. Cal. June 26, 2013). the court found that claims essentially identical to those being made by the plaintiff were subject to DirecTV's Arbitration Agreement.  Here, too, where the Customer Agreement specifically contemplates collections activities (see Kniley Decl. Ex. A, § 2(g) ("Collection Costs")), any allegations against DirecTV related to collections are within the scope of the Customer Agreement.

### D.     The Parties' Arbitration Agreement Is Valid and Enforceable

Because DirecTV has shown that the parties have an arbitration agreement that covers Plaintiff's dispute here, this Court must compel arbitration unless Plaintiff can prove that his FAA-governed agreement with DirecTV is unenforceable due to a state law contract defense that applies generally to all contracts.  *See* 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339-341; *In re Cal. Title Ins. Antitrust Litig.*, 2011 WL 2566449, at *2.

In this post-*Concepcion* era, Plaintiff has no viable argument against the enforcement of the consumer-friendly arbitration provision in his Customer Agreement.  See *Concepcion*, 131 S. Ct. at 1753 (holding that the FAA preempts California's *Discover Bank* rule, which invalidated arbitration agreements containing class waivers like the one found in the parties' Customer Agreements). Indeed, since *Concepcion*, at least four District Courts applying California law have enforced the same DirecTV arbitration provision at issue here. *See e.g., Hodsdon*, 2012 WL 5464615, at *4-7 (compelling arbitration after finding that "**the DirecTV arbitration provision bears no indicia of substantive unconscionability**") (emphasis added); *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1068-69 (C.D. Cal. 2011), disapproved in part by

*Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 961-63 (9th Cir. 2012);[1] *Murphy*, 2011 WL 3319574, at *3 (compelling arbitration of claims). *Brown v. DirecTV, LLC* 2013 WL 3273811 (C.D. Cal. June 26, 2013), at *8-10 (finding no unconscionability).

An arbitration agreement must be <u>both</u> procedurally and substantively unconscionable to render the provision unenforceable. *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1171 (S.D. Cal. 2011). While there is minimal procedural unconscionability in any contract of adhesion, the terms under which the parties agreed to arbitrate are not <u>substantively</u> unconscionable. In fact, the terms benefit Plaintiff by shifting costs to DirecTV, by making every remedy he could seek in court available in arbitration, and by ensuring that the arbitration takes place in Plaintiff's hometown under the laws of the state where he received service. See Kniley Decl. Ex. A, §§ 9-10; *see also Hodsdon*, 2012 WL 5464615, at *7 ("DirecTV's provision does indeed contain consumer-friendly provisions."). Thus, the Customer Agreement is valid and enforceable.

## IV.

## **THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT**

Although 9 U.S.C. § 3 refers to staying proceedings, dismissal of the action is proper when all issues raised in a complaint must be submitted to arbitration. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (upholding dismissal where all claims subject to Arbitration). *See also Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143, 147-148 (9th Cir. 1978) (court may grant summary judgment if all claims barred by arbitration provision.)

Here, all of the Plaintiff's claims relate to his contention that DirecTV made

---

[1] Although the *In re DirecTV* court compelled arbitration of all of plaintiffs' damages claims, it denied arbitration of certain injunctive relief claims. The ninth circuit has since stated that the court's ruling exempting the injunctive relief claims was incorrect. *See Kilgore*, 673 F.3d at 961-63 (disapproving *In re DirecTV* court reversed course from its *In re DirecTV* decision (currently on appeal) and compelled arbitration of all claims. *See Golba v. Citigroup, Inc.*, 8:11-cv-01003, Dkt. No. 55 at 8-10 (C.D. Cal. Mar. 30, 2012).

collection efforts against him. As described above, the Customer Agreement specifically references collection efforts. Thus, all of the Plaintiff's claims are subject to and barred by the Arbitration provision in the Customer Agreement. Thus, the Court should dismiss Plaintiff's Complaint.

## V.

## **CONCLUSION**

Because the parties' Customer Agreement contains a valid agreement to arbitrate that covers Plaintiff's claims, this Court must compel arbitration. Moreover, the Court should dismiss DirecTV from this litigation, as Plaintiff's claims against DirecTV are not properly brought in this forum.

Dated: May 26, 2016

AT&T SERVICES LEGAL DEPARTMENT

By: */s/ David J. Benner*
DAVID J. BENNER
Attorneys for Defendant
DIRECTV, LLC