UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY TUCK,<br><br>          Plaintiff,<br><br>v.<br><br>DIRECTV, a National satellite TV service provider, doing business in California, DOES 1 THROUGH 10, inclusively,<br><br>          Defendant. | Case No.: 16-CV-160 JLS KSC<br><br>**ORDER GRANTING DEFENDANT DIRECTV, LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 14) |

  Presently before the Court is Defendant DirecTV, LLC's ("DirecTV") Motion to Compel Arbitration and Stay Proceedings or in the Alternative to Dismiss Plaintiff's Complaint. ("MTN," ECF No. 14.) Plaintiff Roy Tuck filed a response in opposition to Defendant's motion ("Opp'n," ECF No. 21), and Defendant filed a reply in support of its motion ("Reply," ECF No. 23). The Court vacated a hearing on the motion pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 24.) After considering the parties' arguments and the law, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **DENIES AS MOOT** Defendant's Motion to Dismiss.

/ / /

/ / /

# BACKGROUND

On March 16, 2016, Plaintiff filed an amended complaint ("FAC") against Defendant DirecTV alleging violations of the Telephone Consumer Protection Act ("TCPA"), the Federal Fair Debt Collection Practices Act ("FDCPA"), and the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). (FAC, ECF No. 7.) Plaintiff's claims arise from consumer debt collection calls attributed to Defendant for debts Plaintiff allegedly owes for DirecTV services. (FAC ¶ 33.) However, Plaintiff claims that he "has no prior or present established relationship with defendants [DirecTV] and Does 1-10 as it pertains to [any] negative consumer debt account, or any other alleged accounts in any amounts." (*Id.* at ¶ 30 (emphasis removed).) Additionally, Plaintiff claims that he has no contractual obligation to Defendant "to pay them anything." (*Id.* at ¶ 31 (emphasis removed).)

On May 26, 2016, Defendant filed the instant Motion to Compel Arbitration and Stay Proceedings or in the Alternative to Dismiss Plaintiff's Complaint. (ECF No. 14.) Defendant principally argues that Plaintiff's allegations are covered by the terms of the arbitration provision in the DirecTV Customer Agreement (the "Agreement"), which Plaintiff accepted when he became a DirecTV customer.[1] (MTN 4, ECF No. 14-1.) According to Defendant, DirecTV provides the Agreement to customers for their review and acceptance at the time they accept service. (*Id.* at 4.) The Agreement is also available online on the DirecTV website. (*Id.*) Additionally, Defendant contends that Plaintiff was presented with an Equipment Lease Addendum at the time the equipment was installed at his home, which itself contained references to some of the key provisions of the Agreement, including the obligation to arbitrate disputes. (*Id.* at 5–6.)

Section 9 of the Agreement, entitled "**RESOLVING DISPUTES**," contains the arbitration provision, which provides:

---

[1] While Plaintiff argues that he has no contractual obligations to Defendant whatsoever, Defendant argues that Plaintiff became a DirecTV customer on January 31, 2008 when he ordered the DirecTV service. (MTN 5, ECF No. 14-1 (citing Declaration of Eva Kniley ("Kniley Decl.") ¶ 4).)

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:
>
> . . .
>
> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

(Kniley Decl. Ex. A § 9.)

The arbitration provision additionally explains the meaning of the agreement to arbitrate: "**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL**." (Kniley Decl. Ex. A § 9 (emphasis in original).)

Plaintiff does not argue that his claims are not governed by the arbitration clause, nor does Plaintiff argue that the Agreement—or the arbitration clause—is unenforceable. Instead, Plaintiff claims that he has never had an arbitration agreement with Defendant, and that Defendant "has fabricated documents and is intentionally trying to confuse and mislead the Court." (Opp'n 1, ECF No. 21.) Additionally, Plaintiff claims that he has "never seen these alleged agreement excerpts before and was not provided with them at *any time* when opening [an] account with" Defendant.[2] (*Id.* at 2 (emphasis in original).)

The Court now considers the parties' arguments and the law.

## EVIDENTIARY OBJECTIONS

"[O]n a motion to compel arbitration, a court 'may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014) (citation omitted); *see also Xinhua Holdings Ltd. v. Elec.*

---

[2] This allegation directly conflicts with Plaintiff's claim that he has never had a relationship with Defendant. Plaintiff makes other similarly contradictory claims. For instance, in his FAC Plaintiff alleges that the "same consumer business debt[s] allegedly owed to all of the [Defendants] *arose out of a transaction* that was primarily for personal, family, or household purposes." (FAC ¶ 34 (emphasis added).)

*Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013) ("For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings.") (citation omitted); *Hotels Nev. v. L.A. Pac. Ctr., Inc.*, 144 Cal. App. 4th 754, 761 (2006) ("[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.").

With respect to evidence relied on by the Court in this order below, the Court **OVERRULES** Plaintiff's objections. (ECF No. 21.) Specifically, the Court finds the service agreements attached to the declaration of Eva Kniley admissible for purposes of this Motion. (*See* Kniley Decl., Exs. A, E, ECF No. 14-2.)

## LEGAL STANDARD

The Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotations and citations omitted); *see also Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) ("The FAA was intended to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985)); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, [citation], and a federal common law of arbitrability which preempts state law disfavoring arbitration.").

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If the Court finds that the answers to those questions are yes, the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

In determining the validity of an arbitration agreement, the Court applies state law contract principles. *Adams*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. To be valid, an arbitration agreement must be in writing, but it need not be signed by the party to whom it applies as acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 233, 236 (2012). Further, "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Id.*

## ANALYSIS

For purposes of whether Plaintiff must, in fact, arbitrate these claims, the dispositive questions are (1) whether Plaintiff accepted the terms of the Agreement, (2) whether the arbitration clause in the DirecTV Customer Agreement covers this dispute and, if so, (3) whether that clause is otherwise enforceable.

**I.     Plaintiff Accepted the Terms of the Agreement**

The Court finds that Plaintiff accepted the terms of the Agreement, including the arbitration clause. As Defendant explains, Plaintiff accepted the terms of the Agreement by signing up for and continuing to receive DirecTV services, instead of rejecting the initial contract or immediately cancelling service. (MTN 6 (citing Kniley Decl. ¶¶ 12–13).) Additionally, Defendant provides a declaration and exhibits detailing the extent of Plaintiff's relationship with Defendant as a customer for DirecTV services. (*See* MTN 5–6; *see also* Kniley Decl. Exs. B, C, D, F.) Thus, while Plaintiff argues he never saw the Agreement, "[i]t is a well-established principle of California contract law that 'the law imputes to a person the intention corresponding to the reasonable meaning of his words and acts' based on 'his outward expression' and not 'his unexpressed intent.'" *Brown v.*

*DirecTV, LLC*, No. CV 12-08382 DMG EX, 2013 WL 3273811, at *4 (C.D. Cal. June 26, 2013) (quoting *Edwards v. Comstock Ins. Co.*, 205 Cal. App. 3d 1164, 1169 (1988)). Based on the evidence in the record, the Court is not convinced by Plaintiff's unsubstantiated claim that he was never a DirecTV customer.[3] Accordingly, the Court finds that Plaintiff accepted the terms of the Agreement. *See, e.g.*, *Brown*, 2013 WL 3273811, at *4 (confirming that DirecTV's accept-or-return practice is a valid method of contract formation and thus compelling arbitration).

## II. The Arbitration Clause in the DirecTV Customer Agreement Covers Plaintiff's Claims

The Court finds that the language of the arbitration clause contained in the Agreement encompasses Plaintiff's claims. The arbitration clause extends to "any legal or equitable claim relating to this Agreement, any addendum, or [the customer's] Service." (Kniley Decl. Ex. A § 9.) Additionally, the Agreement specifically contemplates collection activities. (*See* Kniley Decl. Ex. A § 2(g) ("Collection Costs: To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us.") (emphasis in original).) Defendant argues that Plaintiff's claims relate to and/or arise under the Agreement and his service. (MTN 11, ECF No. 14-1.) Specifically, Defendant argues that the collection calls were meant to recoup unpaid fees Plaintiff was obligated to pay for the DirecTV services Defendant provided. (*Id.*) Indeed, Plaintiff's FAC alleges that his claims arise from consumer debt collection calls attributed to Defendant. (FAC ¶ 33 ("[Defendant] . . . called [Plaintiff's] cell phone numbers . . . more than fifty five (55) times, *many of these fifty five (55) harassing consumer debt collection calls were made in the same business day . . . .*" (emphasis in original).) Accordingly, the Court finds that Plaintiffs claims relate to and/or arise under the Agreement and are thus governed by the arbitration clause in the Agreement. *Cf. McNamara v. Royal Bank of Scotland Grp.*, No. 11-CV-2137-L WVG, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) ("Plaintiff's

---

[3] To the contrary, as discussed in footnote 2, Plaintiff seems to admit that he was a DirecTV customer.

TCPA claims relate to his Agreement with Defendants, and are consequently subject to arbitration."); *see also Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1188 (S.D. Cal. 2013) (calls made to plaintiffs "because Plaintiffs had failed to make timely payments on their accounts," "for the limited purpose of collecting money owed them," were "'related to' the delinquent credit accounts" and thus TCPA claims based on those calls were governed by the arbitration clause).

### III. The Arbitration Clause in the DirecTV Customer Agreement Is Enforceable

To make a case for unconscionability under California law, a party must show both procedural and substantive unconscionability. *See Armendariz v. Found. Health Pyschcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Courts use a sliding scale to analyze these two elements: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### A. Procedural Unconscionability

Procedural unconscionability involves oppression or surprise flowing from "unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114. "Any contract of adhesion is minimally procedurally unconscionable, but absent other indicia of oppression or surprise, a contract of adhesion has only a low degree of procedural unconscionability." *Brown*, 2013 WL 3273811, at *8 (citing *Ajamian v. CantorCO2e, LP*, 203 Cal. App. 4th 771, 795 (2012)).

The Court finds that the arbitration agreement is only minimally procedurally unconscionable. DirecTV acknowledges that its contract of adhesion by definition carries with it at least some procedural unconscionability. (MTN 13, ECF No. 14-1.) But there appears to be no other evidence of procedural unconscionability. To the contrary, Plaintiff had at least two opportunities to review and reject the Agreement. Within 24 hours of ordering service over the phone, Defendant sent Plaintiff an email with a copy of the Agreement. (*Id.* at 5.) Additionally, Plaintiff was presented with an Equipment Lease Addendum at the time Defendant installed the DirecTV service equipment at his home,

and Defendant would not install the equipment unless a customer accepted the terms of the Equipment Lease Agreement (which references the arbitration clause). (*Id.* at 5–6.) Nevertheless, as explained below, the Court finds that any procedural unconscionability is outweighed by a lack of substantive unconscionability.

### B. Substantive Unconscionability

Substantive unconscionability exists when a contract has "overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114 (citations and quotations omitted). The "ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015). Further, "the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Id.*

Plaintiff has not shown substantive unconscionability, so this Court lacks discretion to refuse to enforce the arbitration agreement on unconscionability grounds. *See Armendariz*, 24 Cal. 4th at 114. To the contrary, the arbitration clause contains many consumer-friendly provisions. For instance, DirecTV pledges to pay all arbitration costs beyond the $125 filing fee. (Kniley Decl. Ex. A § 9(b).) Additionally, DirecTV agrees to hold the arbitration "at a location in your hometown area unless you and we both agree to another location or telephonic arbitration." (*Id.*) Moreover, in arbitration, a putative plaintiff may "seek any and all remedies otherwise available to you pursuant to your state's law." (*Id.*) Indeed, other courts have enforced the same DirecTV arbitration provision at issue in this case. *See, e.g.*, *Hodsdon v. DirecTV, LLC*, No. C 12-02827 JSW, 2012 WL 5464615, at *7 (N.D. Cal. Nov. 8, 2012) ("Because the Court finds DirecTV's arbitration provision lacks any indicia of substantive unconscionability, it is enforceable."). Consequently, because the Court finds that DirecTV's arbitration clause in the Agreement lacks any indicia of substantive unconscionability, it is enforceable.

### IV. Motion to Dismiss

In light of the Court's conclusions that the arbitration clause in the Agreement covers

the claims alleged in this action and is enforceable, the Court does not reach Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons stated above, the Court concludes that the arbitration clause contained in the Agreement (1) encompasses Plaintiff's claims related to the debt collection calls attributed to Defendant and (2) is enforceable. Accordingly, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration and **DENIES AS MOOT** Defendant's Motion to Dismiss. (ECF No. 14.)

Furthermore, pursuant to the FAA, the Court **STAYS** the judicial proceedings pending the outcome of any arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."); *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978) (holding that courts shall order a stay of judicial proceedings "pending compliance with a contractual arbitration clause").

IT IS SO ORDERED.

Dated:  November 15, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge